UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ASARCO, LLC and SOUTHERN PERU HOLDINGS, LLC | ) ) ) |
| Plaintiff, | ) Case No.:  MS 07-6289-EJL-MHW ) |
| vs. | ) MEMORANDUM DECISION AND ) ORDER |
| AMERICAS MINING CORPORATION, | ) ) |
| Defendant. | ) ) |
| | ) ) ) |

This is a miscellaneous action to enforce three subpoenas issued from this Court seeking

the production of documents and expert testimony relevant to a bankruptcy adversary proceeding

pending in the Southern District of Texas.  On August 23, 2007, Chapter 11 Debtor ASARCO,

LLC ("ASARCO"), Plaintiff in the adversary proceeding against Americas Mining Corporation

("AMC"), moved to compel production of documents and testimony from a business consulting

firm, Project Resource Group ("PRG"), pursuant to two subpoenas it had issued.  (Docket No.

1).[1]  Adversary Defendant AMC ("AMC") wants the same documents and testimony from

PRG's representative pursuant to its August 22, 2007, subpoena.  On September 5, 2007, the

Attorney General's Office for the state of Idaho ("Idaho") filed its motion to quash the three

---

[1] On May 4, 2007, ASARCO filed an amended complaint to add Southern Peru Holdings, LLC, a wholly owned subsidiary of ASARCO, as a plaintiff.  Am. Compl., Tex. Docket No. 70.  It does not appear that the district court ever granted any motion associated with that filing, nor does it appear that AMC ever answered, however, Southern Peru Holdings, LLC appears on the docket and future captions as a plaintiff.

subpoenas served upon PRG, or in the alternative, for a protective order.  (Docket No. 5).  Both

parties object to Idaho's motion.

Idaho retained PRG to assist it in settling the state's claims against ASARCO and other

mining defendants in unrelated litigation involving clean-up costs in the Coeur d'Alene basin.

Because Idaho retained PRG to assist it in litigation, Idaho argues that the documents AMC and

ASARCO seek are protected attorney work product and the desired testimony is protected

opinion testimony.  Idaho has objected to producing the documents or allowing Mr. Kriss,

PRG's principal and only employee, to testify.

Having reviewed all briefing submitted, as well as other pertinent documents in the

Court's file, and having heard oral arguments, the Court finds that the motion to compel should

be denied, and Idaho's motion to quash and for a protective order should be granted for the

following reasons.

## I.
## Background

### A.    The Adversary Proceeding.

In the adversary proceeding, Plaintiff and Chapter 11 debtor ASARCO, LLC

("ASARCO") seeks to avoid under 11 U.S.C. §§ 544 and 550[2] an alleged fraudulent transfer by

AMC, the wholly-owned subsidiary of Grupo Mexico, S.A. de C.V. ("Grupo Mexico"), of

ASARCO's 54.2% ownership interest in Southern Peru Copper Corporation ("SPCC") to AMC.

---

[2]  This is an adversary proceeding arising under the Bankruptcy Code.  Unless otherwise indicated, all
chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 1101–1330, and to the Federal Rules
of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date (October 17,
2005) for the relevant provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L.
109-8, April 20, 2005, 119 Stat. 23.  ASARCO LLC filed its petition for bankruptcy under Chapter 11 of the
Bankruptcy Code on August 9, 2005.  Docket No. 1, *In re Asarco LLC et. al.*, Bankr. Case No. 05-21207 (Bankr. S.
D. Tex. 2005).  A plan has yet to be confirmed, and ASARCO has continued to operate as a debtor-in-possession
under 11 U.S.C. §§ 1107 and 1108.

Compl., Docket No. 1, *ASARCO LLC v. Americas Mining Corp.*, Adv. Proc. No. 07-018 (S.D.

Tex. 2007).[3]  ASARCO hopes to recover dividends that it otherwise would have received since

the transfer in 2003 for the benefit of its creditors.

ASARCO alleges in its complaint that AMC and its parent company, Grupo Mexico,

forced ASARCO into the stock transaction, did not pay reasonably equivalent value for the

SPCC stock, and that ASARCO was insolvent at the time of the transfer.  Compl. at 1, Tex.

Docket No. 1.  At the time of the transfer, Grupo Mexico controlled not only AMC, but also

ASARCO and SPCC.  Additionally, ASARCO alleges that AMC "shopped around" for

valuations that would support the price it wanted to pay for the SPCC stock ASARCO owned.

AMC filed its answer and counterclaim on April 5, 2007, Tex. Docket No. 57, denying

that the stock transfer constituted a fraudulent transfer, and asserting that it gave reasonably

equivalent value in exchange for the stock.  The total purchase price for the shares was

$764,750,000.00, composed of $500 million in cash, a promissory note with a principal amount

of $123 million, a promissory note in the principal amount of $100 million that established an

environmental trust, and forgiveness of $41,750,000.00 million in intercompany debt.  Ans. at

17, Tex. Docket No. 57.  AMC contends that it relied upon an independent valuation analysis

conducted by the accounting firm Earnst and Young to arrive at the purchase price for the SPCC

shares.  AMC also counterclaims that, by filing its complaint, ASARCO is in breach of warranty

and made misrepresentations in the consent decree it signed, which decree allowed the stock

transfer to occur.  Ans. at 18, Tex. Docket No. 57.

---

[3] To gain an understanding of the underlying facts, the Court reviewed the pleadings on file in the District Court of the Southern District of Texas.  The Court will refer to the adversary pleadings by their docket numbers in that matter via the notation, "Tex. Docket No."

**Memorandum Decision and Order - Page 3**

On April 25, 2007, ASARCO answered AMC's counterclaim, asserting that it was forced to sign the consent agreement that allowed the stock transfer to proceed.  ASARCO also contended that any representations it made in that agreement should not be binding against ASARCO because of facts that came to light after signing the agreement.  ASARCO asserts that Earnst and Young was not provided with all of the information pertinent to its valuation analysis. Ans., Tex. Docket No. 62.

**B.      The Subpoenas.**

ASARCO served two subpoenas upon PRG.  The first one, served on July 11, 2007, sought document production and deposition on written questions.  Mem. in Support of Mot. to Compel, App., Ex. A, Docket No. 1.  On July 18, 2007, ASARCO served a deposition subpoena scheduling a deposition to cover listed topics.  *Id.*, App., Ex. C, Docket No. 1.  AMC's subpoena, issued on August 22, 2007, seeks similar documents and testimony.  Mem. in Opp., Ex. A, Docket No. 14.  Both parties claim that PRG rendered an opinion concerning the financial strength of ASARCO, which opinion is relevant in the adversary proceeding to the central issue of ASARCO's insolvency.

The affidavit of William Kriss, the principal of PRG, indicates he received the subpoenas, but notified ASARCO that he would be out of town and unable to locate the documents until his return on August 6, 2007.  He also requested that ASARCO contact the Idaho Attorney General's Office about the subpoena, since PRG had prepared the documents at the request of the Attorney General's Office.  Aff. of Kriss, Docket No. 9.  Upon his return, Mr. Kriss compiled the documents and provided them to Deputy Attorney General Darrell Early. Aff. of Kriss, Docket No. 9.

**Memorandum Decision and Order - Page 4**

Due to conflicting travel and work schedules, the first time a deputy attorney general reviewed the subpoenas served upon PRG was on July 23, 2007.  Aff. of Fransen, ¶ 16, Docket No. 8.  Mr. Fransen, who at that time was in transition from his former position as a Deputy Attorney General to the Deputy Director of the Idaho Department of Environmental Quality, was finally able to speak to an ASARCO attorney on July 30, 2007.  He informed ASARCO that Idaho had retained PRG as a consultant expert in anticipation of litigation, and that Idaho would likely object to the production of any documents or testimony responsive to the subpoenas.  Aff. of Fransen, ¶ 21, Docket No. 8.  Mr. Fransen confirmed by e-mail that Idaho would likely object and acknowledged that ASARCO had granted additional time to confer concerning the documents.  Aff. of Fransen, ¶ 25-26, Docket No. 8.

Mr. Early, the Deputy Attorney General replacing Mr. Fransen, contacted attorneys for ASARCO on August 9, 2007, advised ASARCO that PRG had been retained in anticipation of litigation and objected to the subpoenas.   Aff. of Early, ¶ 6, Docket No. 7.  Upon reviewing the documents, Mr. Early again phoned counsel for ASARCO on August 17, 2007, and stated that Idaho objected to production of the documents and testimony.  Aff. of Early, ¶ 9-10, Docket No. 7.  ASARCO filed its motion to compel on August 23, 2007.  Docket No. 1.

Idaho hired PRG to provide professional consultation services to the Idaho Attorney General in connection with negotiations over the clean-up of mining sites in the Coeur d'Alene basin.  Aff. of Kris, Ex. A, Docket No. 9.  ASARCO was involved in these settlement negotiations along with several other mining company defendants.  Aff. of Fransen, Docket No. 8.  The contract between PRG and the Idaho Attorney General stated that the services and documents PRG prepared would be the property of the Idaho Attorney General, and that work

product would not be disclosed without consent.  Throughout the negotiations, the Idaho

Attorney General's Office cooperated with the Department of Justice and shared documents both

with the Department and its retained experts.  PRG was not disclosed as an expert witness, and at

all times was considered a consulting expert by the Attorney General.  Aff. of Fransen, ¶¶ 5-10,

Docket No. 8.

ASARCO has in its possession one of the documents PRG prepared, marked as

"confidential," which purports to be a critique of a valuation analysis of Southern Peru Copper

by another consultant, Behre Dolbear, who was hired by the Department of Justice.  App., Ex. D,

Docket No. 1.  AMC possesses the same document.  Ex. B, Docket No. 14.  PRG's critique

expressly states that it "serves as a technical consultant to the State of Idaho and Office of

Attorney General with regard to the Coeur d'Alene Basin environmental settlement negotiation,"

and that one of the parties to the negotiation is ASARCO.  *Id.*

Idaho has identified several documents responsive to ASARCO's and AMC's subpoenas,

which are generally described as internal e-mails discussing the settlement negotiations,

valuation analysis, conference call notes, and other draft discussions relating to the settlement of

claims against ASARCO.  It is these documents and the opinion testimony of PRG's principal,

Mr. Kriss, that ASARCO and AMC both want.  Neither PRG nor Idaho are parties to the

adversary proceeding.  However, review of the record reveals Idaho is pursuing claims against

ASARCO's bankruptcy estate.  Mem. in Response at 4 n.1, Docket No. 5.[4]

---

[4] Idaho is a creditor in ASARCO's bankruptcy case, and has reached a tentative settlement with ASARCO of its claims that is awaiting approval by the district court presiding over the bankruptcy case.  Mem. at 4 n.1, Docket No. 5; Reply at 2 n.1, Docket No. 19.

**Memorandum Decision and Order - Page 6**

## II.
## Discussion

ASARCO argues that PRG should be ordered to comply with the subpoenas for several reasons. First, ASARCO argues that the work product privilege, Fed. R. Civ. P. 26(b)(3),[5] does not apply because its application is restricted to parties seeking work product of other parties to the same litigation. If Fed. R. Civ. P. 26(b)(3) did apply, ASARCO argues it has established substantial need and waiver of the privilege because third parties have disclosed some of the documents to ASARCO in the adversary proceeding. ASARCO also argues that PRG has never objected and Idaho's objections were untimely under Fed. R. Civ. P. 45(c)(2)(B).[6]

AMC asserts similar arguments in its opposition to Idaho's motion. First, AMC argues that Idaho has not met its burden to articulate with specificity why the documents and testimony AMC (and ASARCO) seeks should be protected as privileged. AMC also argues that any privilege has been waived, because the Department of Justice requested that Idaho have PRG analyze its expert's analysis prepared by Behre Dolbear and the Department's disclosure of PRG's analysis waived any privilege Idaho could assert. Finally, AMC contends that it can not obtain the information anywhere else, which satisfies its burden to show substantial need.

Idaho raises three arguments rebutting the parties' contentions. First, it argues that ASARCO was well aware of Idaho's objections via telephone communications and e-mail correspondence and therefore its objections were timely. Also, Idaho points out that ASARCO granted PRG additional time to respond due to Mr. Kriss's travel schedule and that ASARCO was aware of the transition occurring in the Attorney General's Office preventing timely review

---

[5]  Fed. R. Civ. P. 26 is made applicable in adversary proceedings by Fed. R. Bankr. P. 7026.

[6]  Fed. R. Civ. P. 45 is made applicable in adversary proceedings by Fed. R. Bankr. P. 9016.

**Memorandum Decision and Order - Page 7**

by a deputy attorney general.  Second, Idaho argues Rule 45(c)(2)(B) does not state that there

will be an automatic waiver of the right to object if a response is not made to the subpoena.  And

finally, Idaho contends that it has standing to raise the work product privilege and that neither

ASARCO nor AMC have met the required showing under Fed. R. Civ. P. 26(b)(3).

**A.      Applicability of Rule 26(b)(3).**

Fed. R. Civ. P. 26(b)(3) states:

> Subject to the provisions of subdivision (b)(4) of this rule, a party
> may obtain discovery of documents and tangible things otherwise
> discoverable under subdivision (b)(1) of this rule and prepared in
> anticipation of litigation or for trial by or for another party or by or
> for that other party's representative (including the other party's
> attorney, consultant, surety, indemnitor, insurer, or agent) only
> upon a showing that the party seeking discovery has substantial
> need of the materials in the preparation of the party's case and that
> the party is unable without undue hardship to obtain the substantial
> equivalent of the materials by other means.

The literal language of the Rule protects materials prepared for any litigation or trial only if they

were prepared by or for a party to the subsequent litigation.  *Fed. Trade Comm'n v. Grolier Inc.*,

462 U.S. 19, 25 (1983) (citing 8 J. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE §

2024 at 201 (1st ed. 1970)).  Even if Idaho is a creditor with claims against ASARCO in its

underlying bankruptcy case, Idaho is not a party to the adversary proceeding between ASARCO

and AMC.  *In re Student Fin. Corp.* (*Stanziale v. Career Path Training Corp.*), No. 06-MC-69,

2006 WL 3484387 *8 (E.D. Pa. Nov. 29, 2006) (explaining that creditors are not parties to an

adversary proceeding).  According to the literal language of the rule, Idaho may not invoke Rule

26(b)(3) to shield it from ASARCO's and AMC's subpoenas requesting documents prepared for

it by PRG in other litigation with or against ASARCO.

**Memorandum Decision and Order - Page 8**

Although the language of the rule clearly does not protect documents prepared for a person or entity who is not a party to the present suit, one emerging trend has been to extend the work product privilege to subsequent litigation if that litigation is "closely related." *In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994). The Ninth Circuit has adopted a contrary view, limiting Rule 26(b)(3) to its literal terms and declining to extend work product protection to non parties. *In re Cal. Pub. Util. Corp. v. Westinghouse Elec. Corp.*, 892 F.2d 778, 781 (9th Cir. 1989) (concluding that the rule, on its face, limits protection to one who is a party to the litigation in which discovery is sought).[7] Complicating the choice between the two approaches, the Supreme Court in *Grolier* stated in dicta that it "did not necessarily agree" with the "related litigation test" under Fed. R. Civ. P. 26(b)(3), but did not decide the issue because the Freedom of Information Act provided sufficient grounds to decide that case. *Grolier*, 462 U.S. at 24.

The Court need not choose in this instance between these two alternative theories advanced under Rule 26(b)(3),[8] because there is an alternative basis that encompasses protection for third party attorney work product.

### B.      Applicability of Rule 45 and Rule 26(c).

This Court issued all three subpoenas under Fed. R. Civ. P. 45(a)(2). That rule states that a subpoena for attendance at a deposition or for production of documents must issue from the district court where the deposition is to be taken or the district where the production of documents is to be made. Fed. R. Civ. P. 45(a)(2)(B), (C). A person commanded to produce and

---

[7]  It should be noted that *In re Cal. Pub. Util. Corp.* was decided two years before the 1991 amendments to Fed. R. Civ. P. 45, which added subdivision (c). Fed. R. Civ. P. 45, Advisory Comm. Notes, 1991 Amendment. The impact of the changes to Rule 45 will be discussed in more detail later in this opinion.

[8]  The bankruptcy case is pending in the District Court for the Southern District of Texas, which is within the Fifth Circuit, while the subpoena was issued by this Court, a member of the Ninth Circuit.

permit inspection "may," within fourteen days after service of the subpoena, serve a written

objection on the party or attorney requesting the information.  Fed. R. Civ. P. 45(c)(2)(B).  "On

timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if

it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver

applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv).

      Additionally, if a subpoena:

> (i) requires disclosure of a trade secret or other confidential
> research, development or commercial information, or
> (ii) requires disclosure of an unretained expert's opinion or
> information not describing specific events or occurrences in
> dispute and resulting from the expert's study made not at the
> request of any party, . . .
> the court may, to protect a person subject to or affected by the
> subpoena, quash or modify the subpoena or, if the party in whose
> behalf the subpoena is issued shows a substantial need for the
> testimony or material that cannot be otherwise met without undue
> hardship and assures that the person to whom the subpoena is
> addressed will be reasonably compensated, the court may order
> appearance or production only upon specified conditions.

Fed. R. Civ. P. 45(c)(3)(B)(i), (ii), (iii).

      Rule 45 provides the appropriate analytical framework for Idaho's work product claims.

*See Stanziale*, 2006 WL 3484387 at *11 (declining to apply Fed. R. Civ. P. 26(b)(3), and instead

finding Fed. R. Civ. P. 45 to be the court's source of authority).  Rule 45 was amended in 1991

to enlarge the protections afforded to witnesses and other affected parties and subsection (c) was

added.  "Paragraph (c)(3) explicitly authorize[s] the quashing of a subpoena as a means of

protecting a witness from misuse of the subpoena power."  Fed. R. Civ. P. 45, Advisory Comm.

Note, 1991 Amendment.  Rule 45 also allows the court issuing the subpoena to quash or modify

the subpoena if it "requires disclosure of privileged or other protected matter and no exception

applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).  The language therefore protects against discovery of third-party work product in appropriate cases.  Furthermore, the language specifically includes protection from discovery by a party of an unretained expert's opinion that was not retained by either party.

Rule 26(c) also authorizes the Court to issue a protective order "for good cause shown" to protect "a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c).  A protective order may be issued under Rule 26(c) to prevent disclosure of the material prepared by PRG for Idaho in the earlier litigation.  *See Cal. Pub. Util. Corp.*, 892 F.2d at 781 (declining to apply Fed. R. Civ. P. 26(b)(3), but noting that to the extent disclosure caused a hardship to the plaintiff, it was free to seek a protective order under Rule 26(c)); 8 J. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2024 at 356 (2nd ed. 1994) ("To the extent that Rule 23(b)(3), literally read, seems to give insufficient protection to material prepared in connection with some other litigation, the court can vindicate the purposes of the work-product rule by the issuance of a protective order under Rule 26(c).").

The party seeking a protective order must demonstrate that "good cause" exists for the protection of that evidence.  *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004).  "Good cause" is established where it is specifically demonstrated that disclosure will cause a "specific prejudice or harm."  *Rivera*, 384 F.3d at 827.  But "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *Rivera*, 384 F.3d at 827 (quoting *Phillips ex. rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002)).

Both Rule 45 and Rule 26(c) allow the Court to consider Idaho's motion and tailor appropriate relief to protect disclosure of work product or other confidential information.

### C.    Idaho's Objections Were Timely.

Preliminarily, ASARCO raised the argument that Idaho's objections were untimely and therefore Idaho waived its right to object.  The Court notes that Rule 45 permits the person to whom the subpoena was directed to serve written objection within fourteen days.  However, a written objection is not mandatory according to Rule 45's express language.  Furthermore, the contract between Mr. Kriss, PRG's managing member and only employee, and Idaho does not give Mr. Kriss the authority to consent or object to any request for information relating to the services he provided to Idaho under the contract.  Rather, the contract states that all documents PRG prepared "are owned by and are for the exclusive use of the Attorney General and shall not be disclosed to any person without the prior written consent of the Attorney General."  Aff. of Kriss, Ex. A, Docket No. 9.  It further states that "[a]ny documents provided to [PRG] by the Attorney General shall remain the property of the Attorney General and shall not be disclosed or disseminated to any person without the prior written consent of the Attorney General.  All reports or other documents produced or obtained by [PRG] pursuant to this contract shall not be disclosed or disseminated to any person without the prior written consent of the Attorney General."  Aff. of Kriss, Ex. A, Docket No. 9.  PRG therefore has no authority to consent to disclosure of any document it prepared for or received from the Attorney General.  A vast majority of the documents sought by ASARCO and AMC would fall under this contractual exclusion.

Idaho, the party affected by the disclosure, is the appropriate party to move for a protective order or order modifying the subpoena.  Neither Fed. R. Civ. P. 26(c) nor Rule 45 contains a fourteen day requirement for service of an objection to the subpoena by Idaho.  *New Park Ent. LLC v. Elec. Factory Concerts, Inc.*, 2000 WL 62315, at *5 (E.D. Pa. Jan. 13, 2007). Even if there was some time limit, Idaho reviewed the documents PRG had responsive to the subpoenas in a timely fashion and notified ASARCO that the State would likely object as early as July 30, 2007, only nineteen days after service of the first subpoena on July 11, 2007.  Upon reviewing the documents, the Attorney General's office confirmed its objections via e-mail correspondence on July 30, 2007 and followed up with two telephone calls on August 9 and 23, 2007.  ASARCO's motion to compel and Idaho's motion to quash followed shortly thereafter.

The Court therefore finds that Rule 45 required neither Idaho or PRG to make a written objection within a specific time period.  Under the circumstances in this case, the Court finds that Idaho's objection in the form of its motion to quash and for protective order was timely.

### D.    Idaho Did Not Waive Its Right to Assert Privilege.

Both ASARCO and AMC assert that any privilege was waived because they both possesses some of PRG's documents obtained through discovery with other parties or via Freedom of Information Act requests to the Department of Justice, who had joined with Idaho in the prior litigation against ASARCO.  Pl.'s Reply at 6–7, Docket No. 11.  However, the "mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege."  *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir, 1989); *see also Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466–67 (11th Cir. 1984) (holding no waiver occurred when documents were transferred by counsel to the EEOC in preparation of a joint trial); 8 J.

Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2024 (3d. ed. 1999) ("disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information. Most cases have so held and have found no waiver from disclosure."). The privilege will be waived only if the party has disclosed work product to an adversary. *In re Syncor ERISA Litig.*, 229 F.R.D. 636 645-46 (C.D. Cal. 2005) (citing *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1429 (3d Cir, 1991)). *See also U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997) (noting that only disclosures in a way inconsistent with keeping it from an adversary waives work product protection and holding that disclosure to a joint litigant when the parties shared a common interest did not waive work product protection). Also, if one party to a common defense unilaterally tenders work product materials to an adversary, that disclosure does not constitute a waiver for the other party. *John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers*, 913 F.2d 544, 556 (8th Cir. 1990), *cert. denied*, 500 U.S. 905 (1991).

In *Morrell*, the Eighth Circuit Court of Appeals upheld the district court's ruling that documents in the hands of the defendant were inadmissible at trial. The defendant had obtained the documents inadvertently when an expert witness hired by a party in previous litigation turned over his files to the defendant in discovery. The documents had been shared in previous litigation by two defendants mounting a common defense against one of the defendants involved in the case before the court. The court explained that when "information is exchanged between various co-defendants and their attorneys[,] . . . this exchange is not made for the purpose of unlimited publication and use, but rather, the exchange is made for the limited purpose of

**Memorandum Decision and Order - Page 14**

assisting in their common cause. . . It is fundamental that the 'joint defense privilege cannot be waived without the consent of all parties to the defense.'" *John Morrell & Co.*, 913 F.2d at 556 (citations omitted).  The fact that the union defendants may have inadvertently gained access to the documents did not affect the privilege. *John Morrell & Co.*, 913 F.2d at 556.

Idaho's disclosure of documents to the Department of Justice, its ally in previous litigation against ASARCO, or to the Department's retained expert, Behre Dolbear, did not result in waiver of the work product privilege.  Idaho cooperated with the Department of Justice and its experts against ASARCO at the time it shared the documents.  Cooperation in a joint defense by sharing resources does not result in waiver of the work product privilege.  Moreover, at oral argument, Idaho indicated that it was not aware of the disclosure.  Even though the Department of Justice may have disclosed the documents to ASARCO and AMC in response to both a Freedom of Information Act and a discovery request, Idaho may still assert the privilege.  The Department of Justice, under the holding in *Morrell*, can not waive the privilege for Idaho by disclosure of documents it obtained as a result of its cooperation with Idaho in settlement discussions with ASARCO.

Although the Court finds that Idaho did not waive its right to assert a claim of work product privilege, the Court finds that a motion in limine addressed to the trial court in the Southern District of Texas would be the best forum to decide if the documents ASARCO and AMC now have in their possession are admissible in evidence.

**Memorandum Decision and Order - Page 15**

> **D.      Analysis of the Subpoenas.**

As for the heart of the matter, there are two issues: the disclosure of documents, and compelling the oral deposition of Mr. Kriss, PRG's principal.  ASARCO's July 11, 2007, subpoena and AMC's August 22, 2007, subpoena seek production of documents prepared by a consultant Idaho retained to assist it in litigation and eventual settlement negotiations with ASARCO, a previous adversary.  In essence, the subpoenas seek to compel discovery of an adversary's work product prepared in anticipation of litigation against one of the parties issuing the subpoena.

> **1.      Production of Documents.**

Under the circumstances, disclosure of Idaho's work product implicates the purposes of the work product doctrine.  Adversaries should not be able to have free access to their opponent's preparation.  To borrow from the well reasoned opinion in *Stanziale*, "[a]llowing a defendant [or plaintiff] in an adversary action brought by the trustee [or debtor-in-possession] to discover creditors' attorney work product would impair those attorneys' ability to investigate their clients' potential claims and to develop legal strategies.  Allowing such discovery would also enable a defendant to utilize the creditors' investigation as his own and thereby free-ride on 'wits borrowed from the adversary.'"  *Stanziale*, 2006 WL 3484387 at *12 (citing *Hickman v. Taylor*, 329 U.S. 495, 517 (1947)).

Even though the information was prepared for other litigation, the information is relevant in the context of any claims Idaho may have against ASARCO in its bankruptcy case.  The potential for additional litigation between ASARCO and Idaho in the underlying bankruptcy case exists on several levels.  Idaho may gain from the adversary proceeding pending between

ASARCO and AMC, as any money collected would be paid to the estate for the benefit of

ASARCO's creditors.  Presumably, that money could be used to fund a Chapter 11 plan.  In that

context, Idaho may want to prevent AMC or ASARCO from obtaining PRG's valuation analysis,

depending upon the opinions expressed, to protect Idaho's potential benefits from the outcome of

the adversary proceeding.  There is also the possibility that Idaho could become adverse to

ASARCO once a plan is proposed, and object to the plan or its treatment under the plan.  Finally,

there is the possibility that if its settlement agreement is not approved by the district court

presiding over the bankruptcy case, Idaho could become involved in claims litigation against

ASARCO.

    After additional review, it appears the majority of the documents identified in Idaho's

supplemental privilege log, Supp. Aff. of Early, Docket No. 29, are subject to the work product

privilege.  The documents were either authored by Deputy Attorney General Fransen, or

provided to him by Mr. Kriss, PRG's principal.  Some documents are identified as relating to

settlement negotiations.  Other documents are described as prepared specifically at the request of

an attorney.  However, documents disclosed to the public or of an entirely factual nature are not

protected work product.  For example, Idaho has identified two press releases and documents

indicating copper values that appear to be factual or public information not subject to any

privilege.  It appears that Idaho has produced all of the documents that are factual in nature or

that were public knowledge; however the Court will direct Idaho to again review its privilege log

to verify that all non-privileged material has been provided.

    ASARCO and AMC assert that the documents and the resulting opinions rendered by

PRG to Idaho relate directly to a key claim in the adversary case and that there is no where else

**Memorandum Decision and Order - Page 17**

to obtain the documents and opinion information because it would be extremely difficult to reconstruct what PRG did several years ago.  Reply at 6, Docket No. 11, Mem. at 6, Docket No. 14.  However, these arguments are not equivalent to the required showing of need.  ASARCO's financial information is readily obtainable for the relevant time period, as is SPCC's financial information.  Stock and commodity prices are also readily available for the relevant time period.  Both ASARCO and AMC could undertake their own evaluation of the SPCC share value and the value of copper prices at the time the shares were transferred.  Simply because the parties have delayed performing such an analysis until just before expert reports are due on December 14, 2007, according to the court's scheduling order, is not the type of hardship that should be rewarded with access to an adversary's work product.  ASARCO and AMC can obtain this information in the same way that Idaho and PRG did, by examining ASARCO's own records.

The Court finds that the documents ASARCO and AMC want are work product, and that neither party has shown the requisite hardship in order to obtain them.  Therefore, the Court will quash ASARCO's July 11, 2007, subpoena, and modify AMC's August 22, 2007, subpoena and ASARCO's July 18, 2007, subpoena to the extent they request production of the same documents.  As noted, Idaho has disclosed documents of a purely factual nature identified as responsive to ASARCO's request, because those documents are not protected by any privilege.

### 2.      Deposing Mr. Kriss.

ASARCO and AMC also want to depose Mr. Kriss, PRG's principal.  There are several question topics.  To the extent either AMC or ASARCO want to ask Mr. Kriss about relevant underlying  facts within his knowledge, such areas of inquiry may not be prevented by either Rule 26 or Rule 45's work product protection.  *Upjohn Co. v. United States*, 449 U.S. 381, 395-

96 (1981).  "The protection of the privilege extends only to *communications* [to the attorney] and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing."  *Upjohn*, 449 U.S. at 395.  Also, the privilege only attaches to documents, not the facts in the document, and therefore the party seeking those facts can obtain the information through other means of discovery such as depositions and interrogatories.  *ECDC Envtl, L.C. v. N.Y. Marine & Gen. Ins. Co.*, 1998 U.S. Dist. LEXIS 8808 at *44 Case No. CV 96-6033 (S.D.N.Y. June 5, 1998) (citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1262 (3d Cir. 1993)); 8  J. Wright & A. Miller, Federal Practice & Procedure § 2023 at 330–34 (2nd ed. 1994) (explaining that the work product concept "furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned" even though the documents themselves may be protected from discovery).  Thus, while the Court may prevent ASARCO and AMC from obtaining the desired documents, the privilege does not preclude them from seeking the facts contained in those documents by deposing Mr. Kriss of PRG.

Nevertheless, both ASARCO and AMC will be prohibited from inquiring into matters that are protected by the work product doctrine.  The prohibition extends to any questions about the thoughts, opinions, and mental impressions of Idaho's representatives and attorneys concerning how Idaho evaluated the information PRG prepared, and what Idaho's course of action would be as a result.  Nor can PRG be compelled to discuss specific questions that Idaho's attorneys asked it, or any questions that would elicit answers peculiar to Idaho's evaluation of PRG's analysis.

**Memorandum Decision and Order - Page 19**

The Court will also prohibit questions concerning the opinions Mr. Kriss formed at Idaho's request.  Neither AMC or ASARCO want Mr. Kriss to render "new" opinions, but rather want the very same opinions he formed at Idaho's request as part of its litigation settlement strategy.  However, according to its contract with PRG, Idaho owns the right to disclose the information and opinions held by PRG, and Idaho may invoke its right to prevent disclosure not only under its contract but also under Rule 45(c).  Not only were these opinions communicated to Idaho and its attorneys, but these opinions are protected from disclosure by application of Fed. R. Civ. P. 45(c)(3)(B)(ii).  That provision protects the opinion work product of a non-party expert, and allows the person affected, in this case Idaho, to prevent disclosure.  9A, J. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2463 at 76 (2nd ed. 1995).

ASARCO's argument that Mr. Kriss is unique because he formed his opinions at the time of the transfer and any expert retained now to review the same information would be biased given the pending lawsuit is not persuasive.  Any expert can be hired to review the same documents and data PRG reviewed and render an opinion.  No doubt ASARCO and AMC have already hired experts to do so.  ASARCO and AMC should not, under these circumstances, be permitted to inquire into opinion testimony given to Idaho by PRG and Mr. Kriss for Idaho's sole benefit and exclusive use.

Nor should ASARCO and AMC be permitted to circumvent the protections that would ordinarily be given to Idaho under Fed. R. Civ. P. 26(b)(4)(B)[9] if Idaho was a party to the adversary proceeding.  During the previous litigation between ASARCO and Idaho, ASARCO

---

[9]  Rule 26(b)(4)(B) allows a party to discover facts known or opinions held by a non-testifying expert retained for litigation only upon a showing of exceptional circumstances under which it is impracticable for the party to obtain the facts or opinions on the same subject by other means.

**Memorandum Decision and Order - Page 20**

would have been unable to obtain the opinion testimony it now wants because of Rule 26(b)(4)(B), which prevents a party from discovering facts known or opinions held by a non-testifying expert retained for litigation except under exceptional circumstances.  Since there is the possibility as discussed above that Idaho could become adverse to ASARCO during the bankruptcy proceedings, thus implicating Rule 26(b)(4)(B), the Court should not permit ASARCO to discover PRG's opinions simply because the parties are not currently engaged in litigation.

Accordingly, the Court finds that ASARCO and AMC can inquire about the facts and documents PRG had in its possession and that it relied upon, but may not inquire concerning the opinions PRG formed as a result of that analysis, or the opinions that were ultimately communicated to Idaho.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Motion to Compel (Docket No. 1) shall be **DENIED** in part for the reasons discussed above.  Plaintiff is not entitled to compel production of any documents listed in Idaho's privilege log contained within Mr. Early's affidavit, Docket Nos. 7, 29, with the exception of purely factual information.  Those documents have been produced.  Docket No. 29.  Plaintiff may depose Mr. Kriss of PRG, provided Plaintiff does not inquire into areas designed to elicit testimony concerning protected communications or opinions, as more fully discussed in this memorandum.

**Memorandum Decision and Order - Page 21**

2)      State of Idaho's Motion to Quash and/or for Protective Order (Docket No. 5) shall

be **GRANTED** in part.  Idaho must produce factual and other public information

in its possession.  All other documents identified in Mr. Early's affidavit, Docket

No. 29, that have not been disclosed are protected from disclosure.  Plaintiff and

Defendant may depose Mr. Kriss of PRG, provided neither party inquires into

areas designed to elicit testimony concerning protected communications or

opinions, as more fully discussed in this memorandum.




DATED: November 15, 2007

_____

Honorable Mikel H. Williams
Chief United States Magistrate Judge


**Memorandum Decision and Order - Page 22**